IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-CR-00147-RJC

| | | |
|---|---|---|
| USA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GLENDA TAYLOR-SANDERS | ) | |
| | ) | |

THIS MATTER is before the Court on the defendant's Motion to Withdraw Guilty Plea. (Doc. No. 43). The government has filed a Response in opposition. (Doc. No. 46).

I. PROCEDURAL HISTORY

The defendant was charged on May 22, 2019, in a six-count Indictment with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Doc. No. 3). On May 23, 2019, the defendant had her initial appearance and arraignment, and was released on bond. The defendant entered a not guilty plea as to all counts. On that same day, W. Kelly Johnson ("Johnson"), Assistant Federal Public Defender, was appointed to represent her.

On September 19, 2019, the defendant filed her third motion to continue the trial in order to retain new counsel, among other things. (Doc. No. 15). This motion was granted on September 24, 2019. (Doc. No. 16). The government filed a motion for hearing as to status of counsel on October 22, 2019, because no new counsel had filed an appearance. (Doc. No. 17). The government sought to clarify whether the

defendant was attempting to discharge counsel for purposes of delay. (Id. at ¶ 10). United States Magistrate Judge David S. Cayer held two hearings of inquiry. At the hearing on October 31, 2019, the defendant informed the magistrate judge she was in the process of retaining out-of-state counsel.[1] (Doc. No. 18: Courtroom Recording). During the follow-up hearing on November 7, 2019, the government informed the magistrate judge that the defendant still had not retained counsel and that the intended new counsel was not admitted to practice in this district.[2] (Doc. No. 19: Courtroom Recording). The magistrate judge then informed the defendant to cooperate with appointed counsel, who would remain in the case.

Following these hearings, the defendant's counsel on November 18, 2019, filed a fourth motion to continue the trial and a motion to withdraw as counsel. (Doc. No. 20). Counsel explained that he tried to meet with the defendant to prepare for trial but was repeatedly rejected. (Id. at ¶ 6). On November 21, 2019, the Court denied both motions based on insufficient grounds. (Doc. No. 21). Defendant's counsel on November 24, 2019, filed an unopposed motion for reconsideration, along with his sealed affidavit. (Doc. Nos. 22, 23). This Court conducted a status conference on November 25, 2019, to address this motion. During this status conference, this Court denied the request of counsel to withdraw but granted the motion to continue. Trial was scheduled for February 2, 2019.

---

[1] This hearing has not been transcribed, but the Court has reviewed an audio recording of the proceedings. (Doc. No. 18).

[2] This hearing has not been transcribed, but the Court has reviewed an audio recording of the proceedings. (Doc. No. 19).

2

At another status conference on January 21, 2020, the defendant's counsel orally renewed his motion to withdraw based on the defendant's unwillingness to communicate with him. This Court heard from the defendant who complained that she felt no empathy from counsel and that she was seeking counsel of her own choosing. This Court denied the motion to withdraw and set the case for trial February 3, 2020. On January 22, 2020, Taylor Goodnight ("Goodnight"), Assistant Public Defender, filed a notice of appearance. The government filed a Factual Basis and Plea Agreement on the same date. (Doc. Nos. 26, 27).

Paragraph 5 of the Agreement states that the defendant is aware that she faces a maximum term of 20 years imprisonment, a $250,000 fine, or both, and a period of supervised release up to three years for the offense in Count Four, to which she agreed to plead guilty. (Doc. No. 27 at 1-2). Paragraph 7 of the Agreement states that the defendant is aware that the court has not yet determined the sentence, has the final discretion to impose any sentence up to the statutory maximum for each count, and that the defendant may not withdraw the plea as a result of the sentence imposed. (Id. at 2). Paragraph 1 of the Agreement states that the defendant is guilty of Count Four of the indictment. (Id. at 1). Further, paragraph 11 of the Agreement states that the defendant read the Factual Basis, understood the document, and that it may be used in court. (Id. at 4). The defendant signed this Plea Agreement. (Id. at 6).

On January 24, 2020, the defendant entered her guilty plea before Magistrate Judge David C. Keesler. The defendant took an oath to respond

3

truthfully to the Court's questions. (Doc. No. 46-1: TR at 2). The defendant responded affirmatively that her mind was clear and that she was there to enter a plea of guilty that could not be withdrawn later. (Id. at 4). The defendant responded affirmatively that she understood the maximum penalty was 20 years imprisonment, a $250,000 fine, or both, and a period of supervised release up to three years. (Id. at 6-7). The defendant responded affirmatively that she understood she had the right to plead not guilty and have a trial if she wanted. (Id. at 9-10). The defendant responded affirmatively that she understood the charge and that she was guilty of that charge. (Id. at 10).

The government explained the terms of the Plea Agreement, including the defendant's waiver to contest the conviction and sentence in any appeal or post-conviction action, except her right to claim ineffective assistance of counsel or prosecutorial misconduct. (Id. at 14). Additionally, the government announced that there were no agreements, representations, or understandings between the parties in this case other than those explicitly set forth in the Plea Agreement. (Id. at 14).

The magistrate judge asked whether the defendant had been over the plea agreement carefully with her lawyer. (Id. at 15). The defendant responded that she had not. (Id. at 15). Accordingly, the magistrate judge recessed the hearing to allow the defendant and her counsel to review the Plea Agreement. (Id. at 15-16).

After a thirty-minute recess, the defendant responded affirmatively that she adequately had the opportunity to review the Plea Agreement, that she understood the terms of the agreement, and that she agreed with the terms. (Id. at 17). As to

the Factual Basis, the defendant stated that she understood what was in the document but stated there were incorrect facts within it. (Id. at 19). This assertion led the magistrate judge to recess again. He instructed the defendant to discuss the matter with her counsel. (Id. at 19-21).

The Court reconvened about an hour and twenty minutes later at the defendant's request. (Id. at 21). The magistrate judge acknowledged that there was an Amended Factual Basis that addressed the defendant's concerns, mainly the removal of facts irrelevant to Count Four of the indictment. (Id. at 21). To insure that defendant had not been pressured, the magistrate judge again asked whether the defendant understood it was her decision to plead guilty and whether it was her desire to do so. (Id. at 22-23). The defendant responded affirmatively to both questions. (Id. at 23). The defendant then responded affirmatively that she wanted to plead guilty. (Id. at 23). Further, the defendant responded affirmatively that the changes made to the Factual Basis addressed her concerns, that she understood the document and agreed with it. (Id. at 24-25). Counsel for the defendant signed this document affirming that the Factual Basis was correct on defendant's behalf. (Doc. No. 28 at 2).

When questioned by the magistrate judge, the defendant indicated that she had not been threatened, intimidated, or forced to enter a guilty plea, and that no one had made any promises of leniency or of a light sentence to get her to plead guilty. (Doc. No. 46-1: TR at 26). The defendant also responded affirmatively that she was satisfied with the services of her attorney. (Id. at 26). Finally, the

defendant again answered in the affirmative that she was pleading guilty to Count Four of the indictment. (Id. at 28). Accordingly, the magistrate judge accepted the plea upon finding that the defendant's plea was entered knowingly and voluntarily, with the understanding of the charges, potential penalties, and consequences of the plea. (Id. at 29; Doc. No. 29: Entry and Acceptance of Guilty Plea at 4). Defendant was also informed that she would have 14 days to file any objection regarding her guilty plea. (Doc. No. 46-1: TR at 30). The defendant did not file an objection within 14 days.

On February 24, 2020, counsel for the defendant filed a renewed motion to withdraw due to a conflict of interest.[3] (Doc. No. 35). This motion states that since her guilty plea the defendant has indicated a desire to withdraw her guilty plea because she is innocent, she did not understand the consequences of entering her guilty plea, and because counsel was ineffective. (Id. at 1-2). Judge Keesler granted the motion to withdraw during a hearing on February 27, 2020, and new counsel, S. Frederick Winiker, III, ("Winiker") was appointed on February 28, 2020.

On May 22, 2020, the defendant filed the instant motion to withdraw her guilty plea (Doc. No. 43). This motion detailed that the defendant and Winiker met to review discovery and consult on whether to withdraw her guilty plea. (Id. at 2).

---

[3] The government notes in its response that the motion to withdraw was filed 14 days after the government sent its Relevant Conduct Statement to the defendant and probation indicating the defendant's total offense level could increase by four points if accepted by probation and the Court. (Doc. No. 46 at 6; Doc. No. 42 at 9).

6

## II. LEGAL DISCUSSION

In her motion to withdraw her guilty plea under Federal Rule of Criminal Procedure 32(e), the defendant acknowledged her burden to show a "fair and just reason" for withdrawal. (Id. at 3); Fed. R. Crim. P. 11(d)(2)(B). She claims due to a conflict with counsel, she was told she had no choice but to plead guilty and that she would only accept a guilty plea if she could receive a sentence of probation. (Id. at 4). The defendant further claims that she did not understand she would not still be eligible for a probationary sentence as discussed with her counsel. (Id. at 4-5). Thus, the defendant claims her plea was not knowing and voluntary because "she did not fully understand the interplay between what her guideline range could be [versus] the final sentence." (Id. at 5).

The defendant also asserts her legal innocence. (Id. at 5). The defendant claims that the government had to prove she acted with the intent to defraud. (Id. at 6). The defendant believes that she never acted in October 2018, nor at any other time that is alleged in the indictment, but instead had a deficient record-keeping system. (Id. at 7). Thus, the defendant claims she could not be guilty for the offense because she did not act with the proper intent, nor did she act at all. (Id. at 7).

A defendant does not have an absolute right to withdraw a guilty plea, even before sentencing, but rather bears the burden of demonstrating that a "fair and just reason" supports her request to withdraw. Fed. R. Crim. P. 11(d)(2)(B); United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Courts typically consider a variety of factors in determining whether a defendant has met her burden,

7

including: (1) whether the defendant has offered credible evidence that her plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted her legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources. Id.

It is well-settled that magistrate judges may conduct Rule 11 proceedings and accept guilty pleas with a defendant's consent. United States v. Osborne, 345 F.3d 281, 285 (4th Cir. 2003); United States v. Graham, 48 Fed. Appx. 458, 459 (4th Cir. 2002) (unpublished opinion). "[A]n appropriately conducted Rule 11 proceeding raises a strong presumption that the plea is final and binding." United States v. Wilson, 81 F.3d 1300, 1306 (4th Cir. 1996). Statements made by a defendant during the course of such a proceeding may not ordinarily be repudiated. Id. at 1308. In fact, a strong presumption of veracity attaches to a defendant's declarations made in open court. United States v. Morrow, 914 F.2d 608, 614 (4th Cir. 1990).

Here, the defendant told the magistrate judge during the Rule 11 hearing that she understood that the maximum penalty was 20 years' imprisonment, and she told him that she had the chance to discuss this with her attorney. (Doc. No. 46-1: TR at 7). However, in her motion, the defendant now claims that due to a conflict with her counsel over the defense of her case, she did not understand the consequences of her guilty plea.[4] (Doc. No. 43 at 4). Given the factual record in this

---

[4] As detailed above, the defendant was granted trial continuances to retain private counsel of her choosing. At her plea, she was represented by a different Assistant Federal Public Defender than first assigned.

case, the defendant's attempt to repudiate her statements under oath is unavailing. During her Rule 11 hearing, the defendant asserted that she understood her sentence had not yet been determined and that she could receive a sentence that was different than the guidelines provided. (Doc. 46-1: TR at 8). Later during the hearing, the defendant asserted that she had not had enough time to review the Plea Agreement with her attorney. (Id. at 15). After a thirty-minute recess, defendant's counsel acknowledged that the defendant had specific questions about enhancements that could apply at sentencing. (Id. at 17). The defendant then responded affirmatively that she adequately had the opportunity to review the Plea Agreement, that she understood the terms of the agreement, and that she agreed with the terms. (Id. at 17). Further, the defendant had signed the Plea Agreement indicating that she understood the sentence would not be determined until sentencing. (Doc. No. 27 at ¶ 7). Therefore, the defendant's claim, that the plea was not knowing and voluntary because she did not fully understand the interplay between guideline range versus the final sentence, is not credible.

The defendant also claims in her motion that the plea was not knowing and voluntary because the defendant and her counsel failed to communicate, and as a result the defendant's counsel forced her to enter into the Plea Agreement. (Doc. No. 43 at 4). Again, given the factual record in this case, the defendant's attempt to repudiate her statements under oath at the Rule 11 hearing is unavailing. The factual record of this case indicates that the defendant's lack of cooperation with her the first-assigned counsel led to communication issues between them. (Doc. No. 21

9

at 2). It appears that any conflict with counsel was caused by the defendant, not counsel. Yet, during the defendant's Rule 11 hearing she swore that no one had threatened, intimidated, or forced her to enter a guilty plea. (Doc. No. 46-1: TR at 26). Further, the defendant affirmed multiple times during this hearing that it was her desire to plead guilty. (Id. at 4,10,23,28). Therefore, the defendant's claim that the plea was not knowing and voluntary because the defendant's counsel failed to communicate and forced her to plead guilty is not credible.

Regarding other factors detailed in Moore, the defendant asserts in her motion that she is legally innocent because she did not act with the sufficient intent, nor did she act at all. (Doc. No. 43 at 6-7). However, the defendant admitted in the Amended Factual Basis that she did act with an intent to defraud. (Doc. No. 28 at 2). Early in the Rule 11 hearing the defendant claimed that there were incorrect facts in the original Factual Basis. (Doc. No. 46-1: TR at 19). Later in the hearing after a recess, the defendant affirmed under oath that the Amended Factual Basis was correct, and she agreed with the new document. (Id. at 24-25). Besides admitting that she acted with the required intent, the defendant also admitted she "submitted a fictious financing agreement and related documents to BDCF to induce BDCF to make a loan to cover the premiums on a fictious insurance policy." (Doc. No. 28 at 1). Further, the defendant admits to devising a scheme in October 2018, to defraud BDCF. (Id. at 1). The defendant has the burden to present evidence that has the "quality of power of inspiring belief," and tends to "defeat the elements in the government's prima facie case" or to "make out a successful

10

affirmative defense." United States v. Thompson-Riviere, 561 F.3d 345, 353 (4th Cir. 2009) (citations omitted). The defendant did not meet this burden because "the mere allegation of innocence, without any new evidentiary support, is not entitled to much weight." United States v. Wells, No. 94-5666, 1996 WL 174631, at *5 (4th Cr. Apr. 12, 1996).

Consideration of the other factors detailed in Moore shows the defendant has failed to establish a fair and just reason for withdrawal of her guilty plea. One of the factors is whether there has been a delay between the entering of the plea and the filing of the motion. Moore, 931 F.2d at 248. In Moore, the Fourth Circuit found a six-week delay to be too lengthy. Id. Here, the defendant's plea was accepted by the magistrate judge on January 21, 2020. (Doc. No. 29: Entry and Acceptance of Guilty Plea at 4). The defendant's motion to withdraw her plea was not filed until May 22, 2020, nearly four months later. (Doc. No. 43). Between those dates, the defendant's attorney filed a motion on February 24, 2020, to withdraw as counsel. (Doc. No. 35). In the motion to withdraw, the defendant's counsel indicated that the defendant wanted to withdraw her plea following the Rule 11 hearing. (Id. at ¶ 4). The defendant now asserts that she wished to withdraw her plea immediately, (Doc. No. 43 at 5), but there is no substantial evidence to support this claim because the first indication the defendant wished to withdraw her plea was nearly five weeks after the Rule 11 hearing. (Doc. No. 35 at ¶ 4). This delay coupled with the four-month delay between the defendant's plea and the motion to withdraw the plea weighs against granting her request.

11

Whether the defendant has had close assistance of competent counsel is another factor for the Court to consider. Moore, 931 F.2d at 248. At the defendant's Rule 11 hearing on January 24, 2020, she affirmed under oath that she was satisfied with her second-appointed attorney from the Federal Defender's Office. (Doc. No. 46-1: TR at 26). The defendant now criticizes the former attorney for lack of communication and forcing her to enter into a Plea Agreement. (Doc. No. 43 at 4). However, the defendant swore that no one had threatened, intimidated, or forced her to enter a guilty plea at her Rule 11 hearing. (Doc. No. 46-1: TR at 26). She also responded affirmatively that she had enough time to discuss possible defenses to the charges with her then-appointed attorney. (Id. at 26). Therefore, this factor also weighs against the defendant's request.

The final factors to consider are whether withdrawal will cause prejudice to the government, and whether it will inconvenience the Court and waste judicial resources. Moore, 931 F.2d at 248. Here, a withdrawal will cause prejudice to the government. While the defendant argues that there have been no inconveniences to the government due to COVID-19, she is mistaken. This case was set for trial on February 3, 2020, prior to the global pandemic and the Court's temporary shutdown. Further, the pandemic has now made traveling dangerous and difficult. The government has several out of state witnesses and in a post-COVID world having these witnesses travel is unsafe. Thus, this withdrawal would not only be inconvenient to the government, but also cause prejudice. The Court also recognizes the potential prejudice to the government if the defendant were allowed

12

to withdraw her plea and the case were set for trial after such a delay. Additionally, the court system has a strong interest in judicial economy. Wilson, 81 F.3d at 1306. Significant resources have already been expended on the defendant's case. Further, with the difficulties surrounding COVID-19, the Court would be inconvenienced, especially since the defendant's trial would have taken place before the global pandemic. The defendant was given multiple opportunities to reject the Plea Agreement during her Rule 11 hearing but instead insisted on pleading guilty. Sending the case to trial would waste judicial resources and would cause prejudice to the government.

Thus, all the factors recognized by the Fourth Circuit in Moore weigh against the defendant's request to withdraw her plea.

III. CONCLUSION

A proper Rule 11 hearing was conducted in this case, during which the defendant testified under oath that she understood the maximum penalty she faced, that she understood the terms of her Plea Agreement, that no additional promises had been made to her, that she was satisfied with her attorney, and that Amended Factual Basis was true. Nearly four months later, the defendant claims she did not understand interplay between guideline range versus the final sentence and the consequences of her plea, that she was forced to plead guilty, and that she was innocent. Based on review of the record in this case, the Court finds that the defendant's claim is not credible. The Court further finds that the defendant has failed to establish a fair and just reason to justify withdrawal of her guilty plea.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Withdraw Plea, (Doc. No. 43), is **DENIED**.

Signed: July 6, 2020

*Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
United States District Judge